387 A.2d 820

**COMMONWEALTH of Pennsylvania**

v.

**Curtis THOMAS, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Oct. 12, 1976.
Decided June 2, 1978.

Jack J. Levine, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Carolyn E. Temin, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

Appellant, Curtis Thomas, was convicted in a jury trial of murder of the first degree, robbery, and criminal conspiracy. Post-verdict motions were denied, and sentence of life imprisonment was imposed. This appeal followed.

Viewing the evidence as we must in a light most favorable to the prosecution, and drawing all reasonable inferences therefrom, *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976); *Commonwealth v. Bastone,* 466 Pa. 548, 353 A.2d 827 (1976); the record indicates the following. On December 8, 1973, at or about 12:30 p. m., the victim, Alvin Smultkis, an insurance collector, and his supervisor, Donald Hurwitz, were making a collection at a house in Philadelphia. As they were about to leave the building, two young males, one of them later identified as appellant, and the other as Donald Upshur, entered the vestibule of the building and announced a hold-up. Appellant was carrying a gun. As appellant patted down Hurwitz, Mr. Smultkis pushed the gun aside and ran into the street calling for help. Appellant fired the gun at Smultkis but missed, and then passed the weapon to Upshur, who fired the fatal shot. Appellant and Upshur then departed the scene, taking with them Hurwitz's money and wallet.

Appellant and Upshur were members of an organization known as Black Brothers, Inc. (BBI). According to the testimony of two prosecution witnesses, Malcolm McLaughlin and Carlton Smith (also members of BBI), appellant and Upshur arrived at a BBI meeting at approximately four o'clock the same afternoon. Appellant and Upshur announced to those at the meeting that they had taken part in the robbery and shooting of an insurance man. Upshur later passed the murder weapon to McLaughlin, who delivered it to his sister to keep hidden. Acting on information supplied by McLaughlin, the police located the gun two days later. Appellant was arrested on January 3, 1974, and gave two statements to the police admitting his involvement in the crime.

Appellant does not here contest the sufficiency of the evidence. We have, nevertheless, examined the record in accordance with our statutory duty, *see* the Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187 (1964), and are satisfied that the evidence was sufficient to establish beyond a reasonable doubt, appellant's guilt of murder in the first de-

gree. Act of December 6, 1972, P.L. 1482, No. 334, § 1 (18 Pa.C.S.A. § 2502).

Appellant also raises several trial errors which are alleged to have abridged various constitutional safeguards. We believe that one of these contentions has merit and requires the grant of a new trial.

As stated above, the prosecution's witnesses Smith and McLaughlin, like appellant and Upshur, were members of BBI. Prior to Smith and McLaughlin's testimony, the prosecution furnished defense counsel with statements which these witnesses had earlier given to police. These statements were later introduced into evidence. According to these statements, and to certain testimony given by Smith and McLaughlin at trial, BBI was involved in various illegal activities. According to one of these statements, BBI rules required that one-half of the proceeds of any robbery perpetrated by a BBI member were to be turned over to the organization. The statements also indicated that the gun used in the instant robbery/homicide belonged to the organization, and had been used by other BBI members to commit various "jobs." Because of BBI's criminal activities, and because appellant and the prosecution witnesses Smith and McLaughlin were members of the group, appellant argues, inter alia, that the trial court improperly refused appellant's request that an "accomplice charge" be given to the jury. We agree.

The rationale behind instructing a jury that it should view the testimony of an accomplice with suspicion when the accomplice testifies for the prosecution, lies in the recognition that such a witness, out of a reasonable expectation of leniency, has an interest in inculpating others. *Commonwealth v. Russell*, 477 Pa. 147, 383 A.2d 866 (1978). For an accomplice charge to be required, the facts need not *require* the inference that the witness was in fact an accomplice, they need only permit such an inference. *Commonwealth v. Sisak*, 436 Pa. 262, 259 A.2d 428 (1969). If the evidence is sufficient to present a jury question with respect to whether the prosecution's witness was an accomplice, the

defendant is entitled to an instruction as to the weight to be given to that witness's testimony. *Commonwealth v. Mouzon,* 456 Pa. 230, 318 A.2d 703 (1974). *See also Commonwealth v. Coades,* 454 Pa. 448, 311 A.2d 896 (1973).

■ Ordinarily, to be an accomplice, one must have knowledge of, and participate in, the specific crime charged. *Commonwealth v. Fields,* 460 Pa. 316, 333 A.2d 745 (1975); *Commonwealth v. McFadden,* 448 Pa. 146, 292 A.2d 358 (1972). In other words, an accomplice is an active partner in the planning or commission of the crime. The exact question presented by this appeal has not been addressed before by this Court. Nevertheless, we conclude that the rationale behind the accomplice charge is applicable to the instant case despite the fact that the individual members of BBI might not have known of the occurrences of specific crimes at the time they were actually perpetrated. BBI was organized, according to the evidence presented at appellant's trial, for the purpose of conducting *ongoing* criminal activities. Its members had knowledge of these ongoing criminal efforts and actively participated in the organization's overall scheme. It is irrelevant for the purposes of our decision in the instant appeal that certain specific members of BBI were unaware of what specific criminal acts were being perpetrated by other members of the organization at any given time. The members owned a gun which all knew was available for use in furtherance of the common goal of obtaining the fruits of whatever crimes any member might commit. The members agreed that "profits" would be shared.

Appellant here was charged with criminal conspiracy, among other things, as a result of the robbery-slaying of Smultkis and Hurwitz. The evidence presented at appellant's trial permits the inference that the witnesses McLaughlin and Smith were participants in a conspiracy to commit robberies and other illegal acts in order to financially support BBI. Appellant was therefore entitled to have the jury charged as to the proper scrutiny to be accorded these witnesses' testimony, and the court's error in refusing

the charge as requested was not harmless error. *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978).

Judgment of sentence reversed, and a new trial granted.

JONES, former Chief Justice did not participate in the decision of this case.

POMEROY, J., filed a dissenting opinion in which O'BRIEN, J., joined.

POMEROY, Justice, dissenting.

The majority concludes that the trial court erred in refusing appellant's request for an accomplice charge with respect to the testimony of two prosecution witnesses, Carlton Smith and Malcolm McLaughlin. As I read the record, however, it fails to support the inference that these two witnesses were accomplices in the crime perpetrated by Curtis Thomas. Accordingly, I would affirm the ruling of the court below.

An accomplice charge serves to caution the jury that certain testimonial evidence is of a corrupt source and subject to close scrutiny, *Commonwealth v. Mouzon,* 456 Pa. 230, 318 A.2d 703 (1974), and must be given with respect to a prosecution witness where the evidence presents a jury question as to whether that witness was an accomplice [1] in committing the crime with which the defendant stands charged. *Commonwealth v. Mouzon, supra; Commonwealth v. Sisak,* 436 Pa. 262, 259 A.2d 428 (1969).

1. Section 306 of the Crimes Code defines "accomplice" as follows:
"(c) Accomplice defined.—A person is an accomplice of another person in the commission of an offense if:
(1) with the intent of promoting or facilitating the commission of the offense, he:
(i) solicits such other person to commit it; or
(ii) aids or agrees or attempts to aid such other person in planning or committing it; or
(2) his conduct is expressly declared by law to establish his complicity."
See the Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 306(c).

The theory of the majority is that Smith and McLaughlin aided and abetted the murder-robbery as participants in a "conspiracy to commit robberies and other illegal acts in order to financially support BBI (Black Brothers, Inc.)." Opinion of the Court, *ante* at 822. This is based upon statements given to the police by McLaughlin following his own arrest to the effect that BBI was engaged in nefarious activities of one sort or another, that the murder weapon belonged to the organization, and that the proceeds of the robbery were donated to the organization's treasury. Even if these statements be accepted as true they are insufficient to give rise to an inference that Smith and McLaughlin were in fact accomplices.

In order to establish that one has aided or abetted in the commission of a crime, it must be shown that one was an *active* partner in the planning or commission of the crime; the evidence must lead to more than mere speculation or conjecture. *Commonwealth v. Fields,* 460 Pa. 316, 333 A.2d 745 (1975); *Commonwealth v. McFadden,* 448 Pa. 146, 292 A.2d 358 (1972); *Commonwealth v. Strantz,* 328 Pa. 33, 195 A. 75 (1937). There is in the case at bar a patent absence of any such evidence. Indeed, the majority makes a quantum leap by assuming that mere knowledge of a crime may give rise to an inference of complicity in that crime. Such a notion has long been rejected in this Commonwealth: "mere knowledge of the perpetration of a crime does not involve responsibility for its commission." *Commonwealth v. Giacobbe,* 341 Pa. 187, 195, 19 A.2d 71, 75 (1941). While the fact that the proceeds of the robbery in question were donated to the treasury and the murder weapon belonged to the organization could be enough to implicate other members of BBI, including Smith and McLaughlin, their involvement would be only as accessories after the fact.[2] *Commonwealth v. McFadden, supra.*

**2.** Liability as an accessory after the fact is governed by Section 5105 of the Crimes Code. That section provides:

"(a) Offense defined.—A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime, he:

Because the evidence was insufficient to convict either witness on an accomplice theory, it was not error for the trial court to refuse to give an accomplice charge. *Commonwealth v. Tervalon,* 463 Pa. 581, 345 A.2d 671 (1975); *Commonwealth v. Mouzon, supra.* Hence this dissent.

O'BRIEN, J., joins in this opinion.

(1) harbors or conceals the other;
(2) provides or aids in providing a weapon, transportation, disguise or other means of avoiding apprehension or effecting escape;
(3) conceals or destroys evidence of the crime, or tampers with a witness, informant, document or other source of information, regardless of its admissibility in evidence;
(4) warns the other of impending discovery or apprehension, except that this clause does not apply to a warning given in connection with an effort to bring another into compliance with law; or
(5) volunteers false information to a law enforcement officer. The Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 5105."

The trial judge did in fact charge the jury concerning the significance of being an accessory after the fact as to McLaughlin:

"Now, I am going to speak of one witness, and once again please, when I speak of what I have as a witness, please remember it is your recollection; nothing that I say with respect to any witness in any way can control or even slightly determine your views. But you may recall there was a witness, Malcolm McLaughlin, and he was charged with a matter related to this case, mainly that he was in possession of a gun which he knew was used in the perpetration of a crime and he failed to turn it in or report it to the police. "Now, because of this possibility some special rules must apply to your consideration of that testimony as you recall it, not as I may have just stated it.

"As I recall, and it is my recollection only I'm speaking of, Malcolm McLaughlin stated that in return for his testimony in the case, the District Attorney would not prosecute him for the possession of the gun and his failure to go to the police. I suggest to you that you should examine his testimony carefully, closely, and accept it only with caution and care. You should consider whether his testimony is supported in whole or in part by evidence other than McLaughlin's testimony, for it is so supported by independent evidence, it is then, quite obviously, more dependable."

It does not appear that any such request was ever made with respect to Smith, and accordingly the issue is waived.