465 A.2d 690

**COMMONWEALTH of Pennsylvania**

v.

**Anthony Dominick CIOTTI, Appellant.**

Superior Court of Pennsylvania.

Argued March 28, 1983.

Filed Sept. 9, 1983.

Petition for Allowance of Appeal Granted Dec. 20, 1983.

**550**

William F. Cercone, Jr., Pittsburgh, for appellant.

Shad Connelly, Assistant District Attorney, Erie, for Commonwealth, appellee.

Before SPAETH, BROSKY, ROWLEY, McEWEN, MONTGOMERY, HOFFMAN and VAN der VOORT, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in refusing to instruct the jury to scrutinize carefully and accept cautiously the testimony of two Commonwealth witnesses as purported accomplices. We agree and, accordingly, reverse the judgment of sentence and remand for a new trial.[1]

At approximately 7:30 p.m. on November 15, 1977, appellant telephoned Samuel Rossi and received permission to store something in the Rossi garage. Appellant and another man drove a brown van into the garage and told Rossi that the van contained bingo equipment. As the men were drinking coffee and watching television in the Rossi kitchen, appellant gave Rossi $200 and suggested that he "buy something for the kids." Later that evening, Rossi became

---

**1.** This case was remanded for a determination of appellant's remaining contentions. *See Commonwealth v. Ciotti,* 496 Pa. 232, 436 A.2d 983 (1981), *rev'g,* 279 Pa.Superior Ct. 75, 420 A.2d 751 (1980). We granted *en banc* review.

suspicious when he heard on the 11 o'clock news that a local record store had been robbed and the stolen merchandise had been loaded into a van similar to the one in his garage. He immediately went to the garage to inspect the van's contents, but the van was locked and its cargo covered. He then drove to appellant's hotel, where appellant confirmed that the van contained the stolen merchandise but promised to remove it the following morning. Rossi then went home and went to bed. Appellant telephoned Rossi the next morning, and upon arriving at the Rossi home, unloaded the records from the van to the garage floor and drove the van away. Rossi observed appellant and the stolen records and then left for work. During the day, Rossi called home and learned from his wife that appellant had returned to box the records, but had not yet removed them. After work, Rossi again went to appellant's hotel and asked if he had removed the goods. Appellant assured Rossi that the contraband would be taken away, and drove him home. Several hours later, when appellant had still not arrived to reclaim the records, Rossi visited an attorney whom he had unsuccessfully attempted to reach during the day. Together, they consulted a criminal law specialist, who informed Rossi that he was involved and could be charged with a crime and advised him to report to the police. Rossi called home, learned that the records had been removed and proceeded to the police station to give a statement. Appellant was arrested and charged with receiving stolen property. At trial, Mr. and Mrs. Rossi linked appellant to the stolen records. The Commonwealth's evidence failed to establish that appellant either owned the van or perpetrated the robbery. Appellant presented an alibi defense. At the close of testimony, appellant requested the lower court to instruct the jury that the Rossi's testimony must be "scrutinized carefully and accepted with a high degree of caution" if the jury found them to be accomplices. The lower court denied the request and appellant was found guilty.

"It is the rule in Pennsylvania that the testimony of an accomplice of a defendant, given at the latter's trial,

comes from a corrupt source and is to be carefully scrutinized and accepted with caution; it is clear error for the trial judge to refuse to give a charge to this effect after being specifically requested to do so." *Commonwealth v. Sisak,* 436 Pa. 262, 265, 259 A.2d 428, 430 (1969) (citation omitted). *Accord, Commonwealth v. Hudson,* 489 Pa. 620, 628, 414 A.2d 1381, 1385 (1980). The justification for the instruction is that an accomplice witness will inculpate others out of a reasonable expectation of leniency. *Commonwealth v. Upsher,* 488 Pa. 27, 32, 410 A.2d 810, 812 (1980); *Commonwealth v. Thomas,* 479 Pa. 34, 37, 387 A.2d 820, 822 (1978); *Commonwealth v. Russell,* 477 Pa. 147, 153, 383 A.2d 866, 868 (1977). "An accomplice charge is necessitated not only when the evidence requires an inference that the witness was an accomplice, but also when it permits that inference." *Commonwealth v. Upsher, supra* 488 Pa. at 32, 410 A.2d at 812. " '[W]hen the facts with respect to the participation of a witness in the crime for which the defendant is on trial are clear and undisputed, it is for the court to determine whether or not he was an accomplice, but where the facts are in dispute, or different inferences might reasonably be drawn therefrom, the question whether or not a witness was an accomplice is for the jury.' " *Commonwealth v. Sisak, supra* 436 Pa. at 267, 259 A.2d at 431 (citations omitted).

■ In denying appellant's requested instruction, the lower court reasoned that the jury could not infer that the Rossis were accomplices. We disagree. "The general rule for determining whether a witness is an accomplice is 'whether or nor he could be indicted for the crime for which the accused is charged.' " *Commonwealth v. Sisak, supra,* 436 Pa. at 268, 259 A.2d at 431, *quoting Commonwealth v. Hopkins,* 165 Pa.Superior Ct. 561, 564, 69 A.2d 428, 430 (1949). "A person is an accomplice of another person in the commission of an offense if: (1) with the intent of promoting or facilitating the commission of the offense he ... (ii) aids or agrees or attempts to aid such other person in planning or committing it ...." 18 Pa.C.S.A. § 306(c).

*Accord Commonwealth v. Thomas, supra* 479 Pa. at 38, 387 A.2d at 822 ("have knowledge of, and participate in, the specific crime charged"). Appellant was charged with receiving stolen property, i.e., "intentionally receiv[ing], retain[ing], or dispos[ing] of movable property of another knowing that it has been stolen or believing that it had probably been stolen ...." 18 Pa.C.S.A. § 3925(a). Less than five hours after accepting $200 from appellant for storing a van in his garage, Rossi was aware that the van had been used in the robbery and was filled with stolen merchandise. Rather than returning the money to appellant and immediately calling the police, Rossi contacted appellant and told him that the goods would have to be removed. Rossi then gave appellant the entire day to remove the contraband and, in fact, visited appellant after work, to ensure that the goods were gone. Upon learning that the goods still had not been removed, Rossi waited a few more hours before speaking with his attorneys. When they convinced Rossi that he was involved and could be charged even after appellant removed the goods, he decided to inform the police.[2] We cannot agree with the lower court that a jury could not infer that Rossi intentionally aided appellant in the retaining and disposing of goods known to be stolen.[3] Rossi knew the goods were stolen and yet did

---

**2.** The Commonwealth's contention that the "accomplice charge" rationale is inapplicable because the Commonwealth had never discussed bringing charges against the Rossis is meritless. Rossi's own testimony indicated that his attorneys convinced him that he was involved and could be prosecuted even after the records were removed. He further testified that it was with this "in mind" that he went to the police. (N.T. June 19, 1978 at 62–63, 110–11). The jury could infer from that testimony that Rossi went to the police on counsel's advice "to inculpate others out of a reasonable expectation of leniency." *Commonwealth v. Upshur, supra.* That Rossi was successful in avoiding prosecution in no way lessens the scrutiny his testimony requires.

**3.** The lower court also found that appellant was not entitled to the requested instruction because he never implicated the Rossis and his alibi defense was inconsistent with his assertion that they were accomplices. We disagree. The Rossis' own testimony was sufficient to raise the inference that they were accomplices. Appellant's alibi defense that the Rossis were accomplices of an undisclosed third party

not contact the police for over 20 hours, all the while hiding the goods in his garage. He never offered to return the money to appellant after realizing it was a payment for secreting stolen property, and in fact, kept the money until counsel advised him to relinquish it to the police. The jury could certainly have inferred that Rossi intended to keep the $200 for maintaining the van and records overnight, provided appellant removed them early in the morning, and that it was not until appellant delayed removing the proper-ty that Rossi decided to confess his own role.[4] Thus, because the jury may reasonably have inferred that Rossi was an accomplice in the receipt and disposition of the stolen goods, the lower court erred in refusing to instruct the jury on the credibility of accomplice testimony. Accordingly, we must reverse the judgment of sentence and remand for a new trial.[5]

So ordered.

ROWLEY and VAN der VOORT, JJ., file dissenting opinions.

ROWLEY, Judge, dissenting:

I join in Judge Van der Voort's dissenting opinion. I agree that Mr. and Mrs. Rossi could not "be indicted and punished for the crime with which [appellant] is charged." *Commonwealth v. Hopkins*, 165 Pa.Super. 561, 69 A.2d 428 (1948). *See* Subcommittee Note to Pa. Suggested Standard Criminal Jury Instructions, § 4.02. There is no evidence, that the Rossis "solicited" appellant to commit, or "aided" appellant in planning or committing, the crime of theft by

does not lessen that inference. Accordingly, the lower court erred in refusing to grant the charge.

**4.** Similarly, the jury could have inferred that Mrs. Rossi was an accomplice. Knowing that her husband had been paid $200 to hide stolen merchandise, she made no effort to contact police or return the stolen property. In fact, she stayed home with the records and even jammed the garage door so that it could not be opened.

**5.** Because of our disposition of this matter, we need not address appellant's final contention.

receiving stolen goods. Nor is there any evidence that the Rossis *intended* to promote or facilitate the commission of the crime with which appellant was charged and convicted. *See Commonwealth v. McFadden,* 448 Pa. 146, 292 A.2d 358 (1972). At most, the Rossis could be convicted of hindering the apprehension or prosecution of appellant. 18 Pa.C.S.A. § 5105. The comment of the Joint State Government Commission to § 5105 states that the section "covers the accessory after the fact ... an accessory after the fact [is] one who, knowing that someone has committed a felony, receives, relieves, comforts or assists the felon or in any manner aids him to escape arrest or punishment." This is more descriptive of the conduct of the Rossis, viewed in the *worst* possible light, than is the definition of an "accomplice." *Commonwealth v. McFadden, supra.* Since I agree that the Rossis are not "accomplices," as a matter of law, I agree that the trial court did not err in refusing to give the "accomplice" charge.

VAN der VOORT, Judge, dissenting:

Again I dissent in this case involving Anthony Ciotti. I dissent because there is no evidence to indicate that the Commonwealth's chief witnesses, Samuel and Andrea Rossi, might have been "accomplices" of appellant, and also because I feel that the defense waived any right to have an accomplice charge read to the jury.[1]

1. The following points for charge relevant to accomplice testimony were presented in writing to the lower court, and were denied in chambers on record:

   12. Andrea Rossi and Samuel Rossi should be considered accomplices in this case.
   13. The testimony of an accomplice given at a Defendant's trial must be carefully scrutinized and accepted with a high degree of caution because of the interest which the accomplice has in the case and because his testimony is from a corrupt source.
   14. A conviction based on the uncorroborated testimony of an accomplice or accomplices is looked on with disfavor by the law.
   15. An accomplice is one who is guilty of the crime charged, in this case, the crime of receiving stolen property and it is well known that when apprehended, accomplices are likely to attempt to cast the blame on others.

The facts of this case are set forth in the majority's opinion; however, some of the facts merit elaboration. Mr. Rossi testified that he did not realize how much money had been given to him by appellant "for the kids" the night of November 15, 1977, until he got undressed for bed after appellant left the Rossi residence. Although Mr. Rossi did not attempt to give the money back to appellant, he did turn it over to the police the following day. Although Mr. Rossi did not immediately contact the police the night of November 15, he did make two phone calls from work on November 16 to an attorney acquaintance, and stopped at the attorney's house that evening after the attorney failed to return his phone calls. Mr. Rossi testified: "I was very scared. I didn't know what to do. I had to ask somebody for advice. I had to talk to somebody, and I tried to call him [the attorney]." Mrs. Rossi similarly testified that she became afraid and didn't know what to do when she realized that there was stolen property in her garage. Within twenty-four hours of discovering that their garage contained stolen property, and immediately after conferring with counsel, the Rossis notified the police and turned over to them the two hundred dollars.

A person may be found guilty of receiving stolen property if he "intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S. § 3925(a). 18 Pa.C.S. § 306(c) defines "accomplice" as follows: [2] "A person is an

There was no discussion on record concerning the lower court's refusal to charge on these points; however, the defense did take specific exception to the court's refusal to read these four points to the jury.

**2.** Since the Crimes Code was enacted after the decision of both *Commonwealth v. Sisak,* 436 Pa. 262, 259 A.2d 428 (1969) and *Commonwealth v. Hopkins,* 165 Pa.Superior Ct. 561, 69 A.2d 428 (1949) (cited by the majority for the "general rule" on whether a witness is an "accomplice"), it would seem to be less confusing and more appropriate to use only the definition of "accomplice" given in the Crimes Code.

accomplice of another person in the commission of an offense if: (1) with the intent of promoting or facilitating the commission of the offense, he (i) solicits such other person to commit it; or (ii) aids or agrees or attempts to aid such other person in planning or committing it; or (2) his conduct is expressly declared by law to establish his complicity." The only part of the definition of "accomplice" which might arguably apply to our situation is (1) (ii). I see absolutely nothing in the record in this case which could lead to any reasonable inference that Mr. and Mrs. Rossi had the intent of "promoting" or "facilitating" the reception, the retention, or the disposition of stolen property by appellant. There is simply no evidence sufficient to present a jury question with respect to whether the Rossis were accomplices.

In *Commonwealth v. Thomas*, 479 Pa. 34, 37–38, 387 A.2d 820, 822 (1978), our Supreme Court set forth the law on accomplice testimony:

The rationale behind instructing a jury that it should view the testimony of an accomplice with suspicion when the accomplice testifies for the prosecution, lies in the recognition that such a witness, out of a reasonable expectation of leniency, has an interest in inculpating others. For an accomplice charge to be required, the facts need not *require* the inference that the witness was in fact an accomplice, they need only permit such an inference. If the evidence is sufficient to present a jury question with respect to whether the prosecution's witness was an accomplice, the defendant is entitled to an instruction as to the weight to be given to that witness's testimony. (Citations omitted).

In the case before us, the police were totally unaware of any connection between the Rossis and the stolen records until the Rossis voluntarily came forward. I do not see how an inference might be drawn that these people who involved themselves by reporting a crime to the police had the intent to "promote" or "facilitate" the retention or disposition of stolen property. The case before us is totally unlike the

situation in *Thomas*, wherein the witnesses were members of the same gang that the appellant belonged to, and were engaged in continuing criminal activities with the understanding that the fruits of any crimes would be shared by the gang members. I do not believe that the trial judge in the case before us erred in refusing to charge the jury on accomplice testimony.[3] Considering the evidence which had been presented, such a charge could only have served to confuse the jury.

As noted previously, the rationale behind an accomplice charge is that an accomplice testifying for the prosecution has an interest beyond that of an ordinary witness, and this interest should be called to the jury's attention so that the jury will hear the testimony with suspicion and weigh it carefully for truthfulness. In the case before us, the following exchange took place at side-bar between the Commonwealth's attorney, Mr. Palmisano, and appellant's attorney, Mr. Scarpitti, after eight of appellant's witnesses had testified and before appellant took the stand himself:

MR. SCARPITTI: Your Honor, Mr. Palmisano has graciously said that we can stipulate that Mr. and Mrs. Samuel Rossi have not been charged with anything arising out of this incident rather than having to call somebody to prove it. Would you announce that—

THE COURT: All right.

MR. SCARPITTI: —to the jury, your Honor, at this time?

THE COURT: All right.

MR. PALMISANO: There's been no deal with them, you know. You understand. I think that—I think same token, there's been no deal with them.

MR. SCARPITTI: I don't know if there's a deal or not, your Honor.

MR. PALMISANO: There is none.

3. The lower court did charge the jury: "Ask yourself whether [the witnesses'] testimony is logical and reasonable; whether it's plausible; whether there is any corroboration for their testimony. Ask yourself whether or not they have any interest in the outcome of this case. The Rossis certainly have an interest. The defendant has an interest."

THE COURT: Are you stipulating on that, too?

MR. SCARPITTI: I didn't—I didn't assume a deal. I could—

PALMISANO: They've never been charged and they've never—there was never any approach, never any conversation about being charged.

MR. SCARPITTI: I believe Mr. Palmisano. I don't know what the police said to 'em, of course. That's the problem. I never asked about a deal. I mean I know you never had any contact with them.

MR. PALMISANO: Never a deal. I never heard of anything in the case about it.

THE COURT: Kind of a funny thing to stipulate on.

MR. SCARPITTI: I don't want to seem like I'm double-crossing you, and I would stipulate that Mr. Palmisano didn't make a deal with them, but I don't—I don't know enough from the police officers to know—to be able to stipulate whether or not they did say anything to them in that respect.

MR. PALMISANO: I don't know what relevancy it is that they have not been charged.

THE COURT: You could have asked them that when they were on the stand.

MR. SCARPITTI: I forgot, frankly, your Honor. That's why I wanted to stipulate it rather than having to call somebody to testify.

MR. PALMISANO: But I don't want it to go in, you know, bare that they haven't been charged because you could have somebody on the jury thinking there's been a deal, which is in conjunction with his trying to discredit these people.

THE COURT: Call them back then.

MR. SCARPITTI: I'd be willing to stipulate, your Honor, that if Mr. and Mrs. Rossi had been asked, they would testify that they were not charged and that if they had been asked, they would testify that no deal was made.

MR. PALMISANO: Right.

THE COURT: All right.

It seems apparent from the above exchange that appellant's attorney wanted the Commonwealth to stipulate that no charges had been brought against the Rossis, so that the defense could argue to the jury that a deal might have been made to obtain the Rossis' testimony, thereby possibly discrediting the Rossis to some extent. When the Commonwealth's attorney was not taken in by the ploy, but requested the additional stipulation that no deal had been arranged, the defense agreed to the stipulation "that if Mr. and/or Mrs. Rossi had been asked on either direct or cross examination, they would have answered that they had not been charged with any crime as a result of this incident; and furthermore, if asked, they would have answered that they had struck no deal with the police or with the district attorney." The lower court was puzzled by the stipulation, doubtless because appellant's defense had been that of alibi [4]—that he had had no contact with the Rossis at the times in question—and because there had been no indication from the evidence presented that anyone might have contemplated bringing charges against the Rossis or that a "deal" of some sort might have been worked out to obtain their testimony. By offering to stipulate, the defense passed up the opportunity to place before the jury evidence (probably because the defense knew that there was none) that the Rossis might be testifying out of an expectation of leniency; yet the defense later requested an accomplice charge, which is based on the theory that an accomplice will testify for the prosecution out of an expectation of leniency. In addition to finding that the record does not permit an inference that the Rossis were accomplices, I would therefore also find that the defense waived any right to have the court give an accomplice charge when it declined the opportunity to question the witnesses concerning any deal that might have

4. Although the majority opinion indicates, n. 3, that part of appellant's defense was that the Rossis were accomplices of an undisclosed third party, the notes of testimony of the trial indicate that this simply was never mentioned (unless, perhaps, it was mentioned in the untranscribed arguments to the jury).

been made, and stipulated that the witnesses would have testified that there had been no deal made.