609 A.2d 785

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Roger JUDGE, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 22, 1991.

Decided May 18, 1992.

Zappala, J., filed dissenting opinion in which Cappy, J., joined.

Daniel A. Rendine, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Philadelphia, Chief Appeals Div., Catherine Marshall and Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY,
McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

On April 15, 1987, appellant, Roger Judge was convicted by a jury of two counts of murder of the first degree and possession of an instrument of crime. Immediately following the verdict, a sentencing hearing was held pursuant to the Sentencing Code, 42 Pa.C.S.A. § 9711, and the jury unanimously sentenced appellant to death for each first degree murder conviction. On June 12, 1987, post-trial motions were heard and denied by the trial judge, who formally sentenced appellant to death for each of the two murders.[1]

On June 14, 1987, two days after sentencing, appellant escaped from custody.[2] On August 11, 1987, while still a fugitive, appellant filed a *pro se* notice of appeal from the death sentence judgments. Appellant is presently incarcerated in British Columbia, Canada, where he is serving two ten-year prison terms for robberies. Pursuant to Article 6 of the extradition agreement between the United States and Canada, appellant cannot be extradited to Pennsylvania, because first degree murder is not punishable by death in Canada.[3] Treaty on Extradition, Dec. 3, 1971; amended June 28, 1974, July 29, 1974, United States–Canada, 27 U.S.T. 983, T.I.A.S. No. 8237; *Criminal Code*, R.S.C., c. C–46, s. 235(1).

1. The two death sentences were imposed consecutively. A consecutive sentence of two and one-half to five years imprisonment was imposed for possession of an instrument of crime.

2. Appellant had previously attempted escape from City Hall by striking a sheriff several times while his cohort stabbed a second sheriff.

3. Article 6 provides: "When the offense for which extradition is requested is punishable by death under the laws of the requesting State and the laws of the requested State do not permit such punishment for that offense, extradition may be refused unless the requesting State provides such assurances as the requested State considers sufficient that the death penalty shall not be imposed, or, if imposed, shall not be executed."

■ On December 22, 1989 this Court, *sua sponte*, entered a *per curiam* order limiting review of the case to sufficiency of the evidence, and propriety of the sentence.[4] In derogation of this Court's order, appellant's attorney raised several claims of error for our review. Although this Court has the authority to correct errors at trial which the appellant raises[5], this Court's rules expressly provide for the quashing of an appeal when the appellant is a fugitive. Pa.R.A.P. 1972(6)[6], and it is within the discretion of this Court to take such action *sua sponte*. *Commonwealth v. Tomlinson*, 467 Pa. 22, 354 A.2d 254 (1976). Additionally, this Court has held that "a defendant who elects to escape from custody *forfeits* his right to appellate review." *Commonwealth v. Passaro*, 504 Pa. 611, 616, 476 A.2d 346, 349 (1984) (emphasis added).

In *Passaro*, we noted that "[d]isposition by dismissal of pending appeals of escaped prisoners is a longstanding and established principle of American law." *Id.*, 504 Pa. at 614–15, 476 A.2d at 348 (quoting *Estelle v. Dorrough*, 420 U.S. 534, 537, 95 S.Ct. 1173, 1175, 43 L.Ed.2d 377 (1975)). In Pennsylvania we have consistently followed this practice.

---

**4.** "AND NOW, this 22nd day of December, 1989, the Court, *sua sponte*, orders that the above matter be set down for argument, limited to statutory review pursuant to 42 Pa.C.S.A. § 9711(h) and the review of the sufficiency of the evidence as required in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327, *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452. *See also Commonwealth v. DeHart*, 512 Pa. 235, 516 A.2d 656 (1986); *Commonwealth v. Peterkin*, 511 Pa. 299, 513 A.2d 373 (1986); *Commonwealth v. Szuchon*, 506 Pa. 228, 484 A.2d 1365 (1985); and *Commonwealth v. Maxwell*, 505 Pa. 152, 477 A.2d 1309 (1984). The Court of Common Pleas of Philadelphia is directed to assure the appellant a counseled appeal.

   Mr. Chief Justice Nix and Mr. Justice Zappala dissent because appellant is no longer within the jurisdiction of the Court. Mr. Justice Zappala further dissents to the application of *Commonwealth v. Passaro*, 504 Pa. 611, 476 A.2d 346 (1984)."

**5.** 42 Pa.C.S.A. § 9711(h).

**6.** Rule 1972. Dispositions on Motion
   Subject to Rule 123 (applications for relief), any party may move:
   \* \* \* \* \* \*
   (6) To continue generally or to quash because the appellant is a fugitive.

*E.g., Commonwealth v. Craddock,* 522 Pa. 491, 564 A.2d 151 (1989); *Commonwealth v. Ciotti,* 318 Pa.Super. 549, 465 A.2d 690 (1983) (en banc), *vacated,* 506 Pa. 10, 483 A.2d 852 (1984); *Commonwealth v. Luckenbaugh,* 356 Pa.Super. 355, 514 A.2d 896 (1986), *vacated,* 520 Pa. 75, 550 A.2d 1317 (1988). Moreover, we have held that once the defendant has fled, his subsequent return or recapture does not provide a basis for reinstating his appeal. *Commonwealth v. Passaro, supra.*

Although *Passaro* was not a capital case, there is nothing in the broad language of the opinion that limits its holding to non-capital defendants. Dismissal of pending appeals of defendants escaped from death row is not a novel concept. *E.g., Allen v. Georgia,* 166 U.S. 138, 17 S.Ct. 525, 41 L.Ed. 949 (1897); *Mosley v. State,* 189 Ga. 71, 5 S.E.2d 47 (1939); *State v. Jugger,* 217 La. 687, 47 So.2d 46 (1950); *see, Jones v. Commonwealth,* 228 Va. 427, 323 S.E.2d 554 (1984), *cert. denied,* 472 U.S. 1012, 105 S.Ct. 2713, 86 L.Ed.2d 728 (1985) (denying motion to dismiss only because the defendant surrendered within period set by court).

However, because of the severity and finality of the sentence of death, we are statutorily mandated to review all death sentences pursuant to 42 Pa.C.S.A. § 9711(h).[7] In

7. The Sentencing Act provides:

(h) Review of death sentence.—

(1) A sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania pursuant to its rules.

(2) In addition to its authority to correct errors at trial, the Supreme Court shall either affirm the sentence of death or vacate *the sentence of death and remand for further proceedings as provided in paragraph (4).*

(3) The Supreme Court shall affirm the sentence of death unless it determines that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

(4) If the Supreme Court determines that the death penalty must be vacated because none of the aggravating circumstances are supported by sufficient evidence or because the sentence of death is

capital cases, we must also review the sufficiency of the evidence to sustain a conviction for murder of the first degree. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327, *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). We will discharge this duty regardless of whether appellant has challenged his conviction on that ground. *Id.*, 500 Pa. at 26 n. 3, 454 A.2d at 942 n. 3. In *Commonwealth v. Heidnik*, 526 Pa. 458, 587 A.2d 687 (1991), this Court held that notwithstanding appellant's desire not to pursue his appeal in order to expedite his execution, we will discharge our duty under the foregoing standard. *See also, Commonwealth v. Appel*, 517 Pa. 529, 539 A.2d 780 (1988) (automatic review mandatory, regardless of appellant's desire to waive appeal). Consequently, appellant's election to flee does not allow him to subvert our goal of insuring that the death sentence comports with the Commonwealth's death penalty statute.

Therefore, even though appellant has forfeited his right to raise any claims of error, we will nonetheless review the sufficiency of the evidence to convict, and appellant's sentence under § 9711(h), where appellant has become a fugitive from justice, and cannot be made subject to the Court's jurisdiction. Were we to decide to delay review pending appellant's return to this jurisdiction, which in this case may be twenty years, we run the risk that, should appellant be entitled to a new trial, the Commonwealth would have a difficult time retrying him, due to the common problems associated with the passage of time.

In reviewing the sufficiency of the evidence, we must view the evidence and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as the verdict winner, and must determine whether

disproportionate to the penalty imposed in similar cases, then it shall remand for the imposition of a life imprisonment sentence. If the Supreme Court determines that the death penalty must be vacated for any other reason, it shall remand for a new sentencing hearing pursuant to subsections (a) through (g).
42 Pa.C.S.A. § 9711(h).

there is sufficient evidence to enable the jury to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Bryant*, 524 Pa. 564, 574 A.2d 590 (1990). Applying this standard, we find the evidence sufficient beyond a reasonable doubt to sustain the jury's verdicts of murder of the first degree.

The evidence adduced at trial discloses the following. On the evening of September 13, 1984, Christopher Outterbridge was engaged in a conversation with his girlfriend across the street from his house at 110 West Wyoming Avenue in Philadelphia. Appellant, Roger Judge, approached the couple and began taunting Christopher. Christopher informed appellant that he did not want to fight, and as he turned to walk away, appellant struck him in the face. In response, Christopher punched appellant, knocking him to the ground; Christopher then retreated to his home. Appellant chased Christopher into his home, where appellant was confronted by Christopher's older brother, Kenneth Outterbridge. After a brief scuffle with Kenneth, appellant left.

Several times that evening, appellant returned to the Outterbridge home. On one occasion appellant told Kia Outterbridge, Christopher's younger sister, that he would be back to kill Christopher. On another occasion, appellant returned to the Outterbridge home with a friend and both appeared to be concealing weapons. Afraid of a confrontation, Christopher sought assistance from his mother, who went out on the porch to confront the men. Appellant repeatedly ordered Ms. Outterbridge to send her son outside, but Ms. Outterbridge refused, and threatened to telephone the police. Appellant left, but informed Ms. Outterbridge that he intended to return.

On September 14, 1984, the following evening, at approximately 11:45 p.m., Christopher and his friends were returning home from a nearby sandwich shop, when one of his friends briefly saw the appellant near the Outterbridge

home.[8]  When the group arrived at the Outterbridge home, they joined Christopher's sister Kia on the front porch. Moments later, appellant jumped out of the bushes, aimed his gun at Christopher, and fired five shots at the teenagers gathered on the porch.  Christopher Outterbridge was shot in the back, and a friend of Christopher's sister, fifteen year old Tabatha Mitchell, was shot in the chest.

After emptying his handgun of ammunition, appellant fled on foot in the direction of Marvine Street, but reversed direction when he realized that police vehicles were arriving from that direction.  As he passed back in front of the Outterbridge house, one of Christopher's friends, Calvin Whitaker, unsuccessfully attempted to apprehend appellant. Appellant fled down a back alley as Calvin repeatedly called out appellant's street name, "Dobe."

A police officer arrived on the scene moments later, after hearing gunshots from the direction of the Outterbridge house.  Christopher ran down the steps bleeding profusely from his neck and mouth and begged to be taken to the hospital; Calvin stood on the porch waving his arms and shouting "It was Dobe"; and Tabatha lay on her back on the porch with a bullet hole in her chest.

The officer immediately called for police assistance and Christopher and Tabatha were transported to the hospital. While enroute to the hospital, Christopher, though barely alive, managed to tell police that "Dobe" had shot him. Soon after arriving at the hospital, both victims were pronounced dead.  Christopher died from a single gunshot wound; the bullet entered the right side of his back, traveled through his right lung, through a large blood vessel, and then lodged in the soft tissue of the right side of his neck.  Tabatha Mitchell's life was also ended by a single gunshot wound; the bullet entered her abdomen, traveled through her liver and pancreas, grazed her backbone, and damaged two major blood vessels.  The bullet finally lodged

8. Michael Douse, a friend of Christopher's testified that he had observed appellant sitting across the street from the Outterbridge home earlier that day.  (N.T. 4/9/87, p. 72.)

in the soft tissue of her back. According to the Medical Examiner, the manner of both deaths was homicide.

Shortly after the shooting, officers established a crime scene and began an investigation. Two .32 caliber projectiles were recovered; one from the porch of the Outterbridge home, the other from a neighbor's property. The following day, several of Christopher's friends conducted an informal search of the back alley down which appellant had fled, and recovered the hooded jacket and sweat pants which appellant had discarded during his flight the night of the shooting.

An intensive search for appellant was conducted by the police, based upon the teenagers' eye-witness identifications of the assailant. Police apprehended appellant two and one-half weeks later with the help of Angela Smith. She had been with appellant the night of the shooting. She testified that sometime between 11:00 p.m. and 12:00 a.m. appellant left stating that he had something to do. (N.T. 4/9/87, pp. 96, 115, 128). When appellant returned approximately one hour later he was out of breath, wet and wearing different clothes. She overheard appellant discussing the incident with his friend. Later, while driving with some others to East Falls, Ms. Smith asked appellant why he had killed "those two people," and he responded that he would tell her after he finished smoking a joint. (N.T. 4/9/97, p. 98). Although appellant never provided her with the requested information, he did tell her that he had disposed of the gun at the house next door to where the murders took place. (N.T. 4/9/87, pp. 98–99).

Approximately two weeks later, Ms. Smith received a telephone call from appellant. He informed her that he was in New Jersey waiting for his friends to bring him some money so that he could purchase a car and a bullet-proof vest. She asked him if he planned on turning himself in and he told her that that would be a "dumb move." (N.T. 4/9/87, p. 102). Subsequent to this conversation, Ms. Smith was interviewed by the police. The homicide detectives instructed her to call them if she heard from appellant

again. On October 2, 1984, Ms. Smith received three tele-
phone calls from appellant informing her that he was on his
way to see her and requested directions. She immediately
contacted the police, enabling them to apprehend appellant
as soon as he entered Ms. Smith's residence. Appellant was
arrested, given his *Miranda* warnings, and then made an
inculpatory statement to the investigating officer, that it
"[d]on't matter if I tell you why I did it or not, I know I'm
done." (N.T. 4/10/87, p. 48).

On November 23, 1984, detectives recovered a rusted .32
caliber Smith and Wesson five-shot revolver from deep in
the bushes in front of a basement window at 1114 West
Wyoming Avenue. A microscopic comparison of the mark-
ings on the revolver and the bullets previously recovered,[9]
led a firearms expert to positively conclude, that three of
the four bullet specimens came from the revolver found in
the neighbor's yard.[10]

At trial, appellant testified that he was with Angela
Smith and five other people at the time the murders took
place, and therefore could not have committed the murders
which occurred at 11:49 p.m. However, appellant failed to
produce any alibi witnesses, claiming that the District At-
torney's office had intimidated them. (N.T. 4/13/87, pp.
49–51, 60, 70).[11] Appellant admitted that he knew he was
wanted by the police, even before the arrest and search
warrants were issued, but hid from them in order to con-
duct his own investigation of the crime. His investigation
failed to produce any exculpatory evidence and/or another
suspect for the crime.

**9.** There were four bullets recovered; one from the porch of the
Outterbridge home, one from the neighbor, and one from each of the
victim's bodies.

**10.** The fourth specimen was too mutilated to make a conclusive
determination.

**11.** Angela Smith's testimony was contrary to appellant's assertion that
he was with her at the time the murders took place, since she testified
that appellant left for approximately one hour and returned after the
shooting occurred.

The foregoing evidence establishes that appellant, enraged by the confrontation he had had with Christopher the previous day, made good on his threats of retaliation, by stalking his victim, lying in wait at his home in order to ambush him, aiming his gun at him, and then firing five shots, striking his intended victim and an innocent bystander. The nature of this attack evinces behavior consistent with a premeditated, specific intent to cause death.

Based upon the evidence, a jury convicted appellant on April 15, 1987 of two counts of murder of the first degree and possession of an instrument of crime. Our review of the record compels us to conclude that the evidence was sufficient beyond a reasonable doubt to support the first degree murder convictions. 18 Pa.C.S.A. § 2502(a).

■ Our review is not complete until we fulfill our statutory obligation to assess the following: (1) whether the sentences of death were the product of passion, prejudice, or any other arbitrary factor; (2) whether the evidence fails to support the finding of at least one specified aggravating circumstance; and (3) whether the sentences are excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.[12]

At the penalty hearing, immediately following the verdict, the jury found the existence of the following aggravating circumstances with regard to Christopher Outterbridge's death: "In the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense," 42 Pa.C.S.A. § 9711(d)(7); "The defendant has a significant history of felony convictions involving the use or threat of violence to the person," 42 Pa.C.S.A. § 9711(d)(9); and "The defendant has been convicted of another Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable or the defendant was undergoing a sentence

12. *See,* n. 7, *supra.*

of life imprisonment for any reason at the time of the commission of the offense." 42 Pa.C.S.A. § 9711(d)(10).

With regard to Tabatha Mitchell's death, the jury found the existence of the following aggravating circumstances: "In the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense," 42 Pa.C.S.A. § 9711(d)(7); and "The defendant has a significant history of felony convictions involving the use or threat of violence to the person." 42 Pa.C.S.A. § 9711(d)(9).

The fact that appellant repeatedly fired his weapon at a group of children gathered in a confined porch area, in his attempt to kill Christopher Outterbridge, supports the finding of the jury that appellant knowingly created a grave risk of death to another person in addition to the victim of the offense. Any one of these children was at risk of being struck by an errant bullet; and, in fact, Tabatha Mitchell, an innocent bystander, was struck and killed by a bullet intended for Christopher Outterbridge. Additionally, stray bullets were recovered from the porch of the Outterbridge home and from a neighbor's property.

Appellant's significant history of violent felony convictions was sufficiently established by the Commonwealth's evidence of two prior convictions for robbery, and one prior conviction for aggravated assault. In light of appellant's violent tendencies, the jury's finding of aggravating circumstance (d)(9) was justified.

Lastly, appellant's conviction of murder of the first degree for the killing of Tabatha Mitchell, justified the jury's finding regarding the murder of Christopher Outterbridge, that appellant had been convicted of another capital offense either before or at the time of the offense at issue.

The only mitigating circumstance the sentencing jury found with regard to both murders was that "The defendant was under the influence of extreme mental or emotional disturbance." 42 Pa.C.S.A. § 9711(e)(2). The jury then unanimously found that the aggravating circumstances out-

weighed the sole mitigating circumstance, and pursuant to 42 Pa.C.S.A. 9711(c)(1)(iv), sentenced appellant to death for each of the two murders.[13]

The circumstances of this crime and the record of this appellant justify our conclusion that the sentences of death imposed upon appellant are neither excessive nor disproportionate to the penalty imposed in similar cases.[14] *See Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984), *cert. denied*, 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984) (and Appendix attached thereto). Additionally, we find, after a review of the record, that the sentences of death were a product of the evidence and not a product of "passion, prejudice or any other arbitrary factor." 42 Pa. C.S.A. § 9711(h)(3).

For the foregoing reasons, we sustain the convictions of murder of the first degree and affirm the sentences of death.[15]

ZAPPALA, J., files a dissenting opinion in which CAPPY, J., joins.

ZAPPALA, Justice, dissenting.

Once again, I write to express my view that although it may be proper for an appellate court to dismiss or quash an appeal when the appellant is a fugitive, Pa.R.A.P. 1972(6),[1]

---

**13.** Section 9711(c)(1)(iv) provides that "the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other cases."

**14.** Based upon information accumulated by the Pennsylvania Death Penalty Study and supplied by the Administrative Office of Pennsylvania Courts.

**15.** The Prothonotary of the Supreme Court of Pennsylvania is directed to transmit the full and complete record of the trial, sentencing hearing, imposition of sentence and review by this Court to the Governor. 42 Pa.C.S.A. § 9711(i).

**1.** The fact that Rule 1972(6) permits the court not only to quash an appeal because the appellant is a fugitive, but also "to continue

416

it is improper to absolutely bar an appellant whose appeal has been so disposed of from petitioning the court and attempting to show good cause for reinstatement of the appeal at a later time. See *Commonwealth v. Passaro,* 504 Pa. 611, 617, 476 A.2d 346, 350 (1984) (Zappala, J., concurring); *Commonwealth v. Luckenbaugh,* 520 Pa. 75, 550 A.2d 1317 (1986) (Zappala, J., dissenting).

That said, I find it thoroughly incongruous that the Court here has opted *not* to dismiss or quash the appeal, but to limit the issues and decide them on the merits. As the appellant is beyond the jurisdiction of the Court, I would simply quash the appeal.

CAPPY, J., joins in this dissenting opinion.

generally", indicates to me a measure of discretion that belies the absolutist view espoused by the majority.