948 A.2d 742

**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Richard BOXLEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 5, 2005.

Re–Submitted Jan. 11, 2008.

Decided May 29, 2008.

622

John Joseph Grenko, Esq., Kenneth C. Myers, for Richard Boxley.

Mark Carlyle Baldwin, Esq., Alisa Rebecca Hobart, Esq., Amy Zapp, Esq., Berks County District Attorney's Office, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD and McCAFFERY, JJ.

## OPINION

BAER, Justice.

This is a direct appeal from the imposition of a sentence of death by the Court of Common Pleas of Berks County.[1] Following a jury trial in 2000, Richard Boxley ("Appellant") was convicted of first degree murder and related offenses, arising from his 1997 shooting of Jason Bolton on a street in Reading, Pennsylvania. On December 3, 2003, this Court affirmed the first degree murder conviction, but vacated Appellant's sentence of death and remanded for a new penalty hearing. *Commonwealth v. Boxley*, 575 Pa. 611, 838 A.2d 608 (2003). Following a second penalty hearing, the jury again returned a verdict of death. For the reasons set forth herein, we affirm.

On June 11, 1997, Appellant and Tito Black were in LaDonna Johnson's home in Reading, Pennsylvania, discussing a plan to kill the victim, Jason Bolton, who had previously engaged in a shoot-out with Black over stolen drug money. Tamika Johnson was present in the home while the two men discussed their strategy and brandished weapons; Black flaunted a 9 mm handgun and Appellant held a .357 magnum revolver. Black stated that Bolton had 48 hours to live. A short time later, Tamika Johnson left the home and Wilson Melendez, who had sold drugs for Black, arrived. Black introduced Appellant to Melendez and directed the men to go to the grocery store down the street. En route, Melendez saw Bolton walking with another man, Tyrone Bryant. Melendez then entered the grocery store, while Appellant ran back to the house to tell Black of Bolton's whereabouts.

Moments later, Melendez left the store and joined Black and Appellant, who had come from the Johnson home, presumably to confront Bolton. By this time, it was mid-afternoon and there were children playing and people walking on the street. Melendez, Black, and Appellant caught up with Bolton and his companion, Bryant, and began to follow them.

1. We have jurisdiction over this direct capital appeal pursuant to 42 Pa.C.S. § 722(4) and § 9711(h)(1).

When they reached Sixth and Chestnut Streets, Appellant and Black told Melendez to look around the corner to determine Bolton's exact location. Melendez told the men that Bolton was near. Appellant then reached into his back pocket for his gun, which accidentally discharged. Appellant immediately walked around the corner, pulled the gun out of his pocket, and began firing at Bolton. At the same time, Black shot twice at Bolton. Bolton and Bryant then ran away from their perpetrators into a vestibule of a nearby building, and quickly closed the door. Appellant followed them and attempted to open the door to the building. As Bolton and Bryant struggled to stop the door from opening, Appellant reached his gun into the doorway, and fired into the vestibule, killing Bolton. Bryant was not shot, but was injured when the window glass in the vestibule shattered from the gunfire.

Appellant, Black, and Melendez immediately fled on foot and met back at the home of LaDonna Johnson. After Appellant assured Black that he had shot Bolton, the men celebrated Bolton's death. By this time, Tamika Johnson had returned. Appellant and Black told Tamika Johnson that they had killed Bolton. Appellant and Black gave their weapons to Melendez, who hid them in the backyard of another house in the neighborhood.

After the murder, Bryant gave a statement to police, which implicated Appellant and Black. Also, the police recovered the murder weapons which had been hidden by Melendez. Appellant was thereafter charged with criminal homicide. At trial, Appellant claimed that Black and Melendez had killed Bolton, and that he had not been involved in the murder. The Commonwealth presented testimony from several witnesses, establishing Appellant's involvement in the crime. Further, medical expert testimony demonstrated that Bolton died from a gunshot wound to the chest and ballistics evidence established that bullet fragments found at the murder scene had been fired from Appellant's .357 revolver.

Appellant was convicted of first degree murder, aggravated assault, recklessly endangering another person, possessing instruments of crime, violating the Uniform Firearms Act, and

conspiracy, and was sentenced to death. On December 17, 2003, our Court affirmed the first degree murder conviction, but vacated the sentence of death and remanded for a new penalty hearing on the ground that Appellant had been deprived of his right to individual *voir dire* regarding the death penalty to uncover bias or prejudice and to exclude prospective jurors who had a fixed opinion and were unwilling to follow the law. *Id.*

On January 28, 2004, the trial court appointed counsel to represent Appellant at the second penalty hearing. On June 4, 2004, our Court adopted Pa.R.Crim.P. 801, set forth at page 746–47 *infra,* which provided for education and experiential qualifications for defense counsel in capital cases. By order dated June 21, 2004, the trial court scheduled jury selection for the penalty hearing to commence on August 19, 2004. On that date, as fully explained in the argument section of this opinion, Appellant's counsel sought a continuance, arguing that he desired to take six continuing legal education credits to comply with the not-yet-effective requirements of Rule 801. The trial court denied the request for a continuance and the jury selection for the penalty phase proceeded as scheduled.

At the penalty hearing, which commenced on August 23, 2004, the Commonwealth presented evidence of two aggravating circumstances: that "[i]n the commission of the offense, [Appellant] knowingly created a grave risk of death to another person in addition to the victim of the offense," 42 Pa.C.S. § 9711(d)(7) (hereinafter "grave risk of death aggravator"); and that Appellant "has a significant history of felony convictions involving the use or threat of violence to the person." *Id.* at § 9711(d)(9) (hereinafter "significant history of violent felonies aggravator"). As discussed in detail *infra,* in support of the grave risk of death aggravator, the Commonwealth presented the testimony of Tyrone Bryant, who had been with Bolton when he was murdered, and the testimony of several neighbors who observed adults walking and children playing on the street where the shots were fired. In support of the significant history of violent felonies aggravator, the Common-

wealth presented evidence establishing that Appellant had two prior New York robbery convictions in 1986 and 1987.

Appellant presented evidence in support of two mitigating circumstances: that the "victim was a participant in [Appellant's] homicidal conduct or consented to the homicidal acts;" *id.* at § 9711(e)(6); and the catch-all mitigator, "[a]ny other evidence of mitigation concerning the character and record of [Appellant] and the circumstances of his offense." *Id.* at § 9711(e)(8). In support of these arguments, Appellant argued that Bolton put himself in a precarious situation by being involved in the drug trade and by engaging in a prior shootout with Black. He further presented the testimony of Lori Monroe, an expert in the field of clinical social work, who detailed Appellant's life experiences, including his prison life following his 1986 and 1987 robbery convictions and his 1994 conviction of possession of a weapon. Monroe additionally testified as to Appellant's difficult childhood and his later role as a loving father and family man.

The jury found that the Commonwealth demonstrated the two aggravating circumstances and that Appellee demonstrated the two mitigating circumstances presented. Finding that the aggravating circumstances outweighed the mitigating, it reached a verdict of death. Appellant was formally sentenced to death for the second time on September 24, 2004.

Appellant filed a notice of appeal to our Court on October 28, 2004. On November 3, 2004, pursuant to Pa.R.A.P.1925(b), the trial court ordered Appellant to file a concise statement of matters complained of on appeal within fourteen days. Appellant failed to file a timely 1925(b) statement. On June 8, 2005, the trial court issued a memorandum opinion, requesting that Appellant's appeal be denied on such ground. Appellant, however, subsequently filed a 1925(b) statement *nunc pro tunc*. Therein, he argued that the trial court erred by failing to grant him a continuance to allow counsel to comply with the educational requisites of Pa.R.Crim.P. 801. He further contended that the trial court erred in allowing testimony regarding Appellant's conviction for possessing an instrument of crime when such crime does not constitute a crime of violence.

Finally, Appellant challenged the weight of the evidence supporting the two aggravating circumstances found by the jury.

On December 5, 2005, this Court remanded the matter to the trial court for the filing of a supplemental opinion to address the *nunc pro tunc* statement of matters complained of on appeal. On March 8, 2006, the trial court complied with our directive and issued a supplemental opinion, rejecting all of Appellant's claims. The trial court held that it did not err in denying Appellant's request for a continuance based on Pa.R.Crim.P. 801 because the rule was not effective at the time the penalty hearing was scheduled. It found Appellant's claim that the court improperly admitted evidence of his 1994 weapons conviction to be "moot" because such evidence was never presented to the jury. Finally, the trial court held that the two aggravating circumstances were not against the weight of the evidence.

■ Generally, in cases where the death penalty is imposed, this Court reviews the sufficiency of the evidence supporting the first degree murder conviction. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937, 942 n. 3 (1982). As this Court has already determined that sufficient evidence supported Appellant's first degree murder conviction, *Commonwealth v. Boxley*, 838 A.2d at 612, we shall proceed to address Appellant's claims, which arise from his second penalty hearing. As these are all questions of law, our standard of review is *de novo* and our scope of review is plenary. *Buffalo Township v. Jones*, 571 Pa. 637, 813 A.2d 659 (2002).

■ Appellant first argues that the trial court erred by denying his request for a continuance to allow his counsel to comply with the educational requirements of Pa.R.Crim.P. 801. He acknowledges that Rule 801 was not effective in August of 2004, when his penalty proceeding began, and did not become effective until November 1, 2004. Appellant relies, however, on "phase-in" language in this Court's June 4, 2004 order adopting Rule 801, which directs counsel to receive six credits for the time period from June 4, 2004 until November 1, 2004. He further relies on language in the *Comment* to

Rule 801, which states that "[t]he educational and experience requirements of the rule may not be waived by the trial or appellate court." Appellant contends that the purpose of Rule 801 is to ensure competent and professional counsel in capital cases and that the only remedy for the trial court's failure to do so here is to vacate his sentence of death and remand for another penalty hearing.

█ The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. *Commonwealth v. Randolph*, 582 Pa. 576, 873 A.2d 1277, 1281 (2005). An abuse of discretion is not merely an error of judgment; rather discretion is abused when "the law is over-ridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record. . . ." *Id.* (citations omitted). To determine whether the trial court abused its discretion in denying Appellant's motion for a continuance, we examine Rule 801 and our order adopting the rule.

**Rule 801. Qualifications for Defense Counsel in Capital Cases**

In all cases in which the district attorney has filed a Notice of Aggravating Circumstances pursuant to Rule 802, before an attorney may participate in the case either as retained or appointed counsel, the attorney must meet the educational and experiential criteria set forth in this rule.

\* \* \*

**(2) Education:**

(a) During the 3–year period immediately preceding the appointment or entry of appearance, counsel shall have completed a minimum of 18 hours of training relevant to representation in capital cases, as approved by the Pennsylvania Continuing Legal Education Board.

(b) Training in capital cases shall include, but not be limited to, training in the following areas: (i) relevant state, federal, and international law; (ii) pleading and motion practice; (iii)

pretrial investigation, preparation, strategy, and theory regarding guilt and penalty phases; (iv) jury selection; (v) trial preparation and presentation; (vi) presentation and rebuttal of relevant scientific, forensic, biological, and mental health evidence and experts; (vii) ethical considerations particular to capital defense representation; (viii) preservation of the record and issues for post-conviction review; (ix) post-conviction litigation in state and federal courts; (x) unique issues relating to those charged with capital offenses when under the age of 18; (xi) counsel's relationship with the client and family.

(c) The Pennsylvania Continuing Legal Education Board shall maintain and make available a list of attorneys who satisfy the educational requirements set forth in this rule.

Pa.R.Crim.P. 801(2).[2]

Our June 4, 2004 order, effective November 1, 2004, states, in relevant part, "from the date of this Order until 18 months after the effective date of this Order, that the educational requirements in new Rule 801 shall be phased in as follows:"

(1) from the date of this Order until the November 1, 2004 effective date, the appointing or admitting court shall determine that the attorney has attended at least 6 hours of courses relevant to representation in capital cases, using the new Rule 801 education criteria as a guide for relevance;

Pennsylvania Supreme Court Order adopting Pa.R.Crim.P. 801, dated June 4, 2004.

We find that the trial court did not abuse its discretion by denying Appellant's motion for a continuance based on Rule 801. As recognized by the trial court, Rule 801 was not yet effective at the time Appellant's counsel was appointed on January 28, 2004 or when his penalty proceeding was conducted in August of that year. As to the "phase-in" language in

2. Subsection (1) of Rule 801 speaks to counsel's experience and requires counsel to be a member in good standing of the Bar of this Commonwealth and an active trial practitioner with a minimum of five years of criminal litigation experience. It further requires counsel to have served as lead or co-counsel in a minimum of eight significant cases that proceeded to a jury for deliberations.

our June 4, 2004 order adopting the rule, such language speaks to the "appointing or admitting court" and directs the court to "determine that the attorney has attended at least six hours of courses relevant to representation in capital cases." This language implies that the determination is to be made by the court at the time counsel is appointed. Because Appellant's counsel was appointed on January 28, 2004, the directive set forth in our June 4, 2004 order was not violated. Moreover, Rule 801 in no way suggests that a defendant is automatically entitled to a new trial if his counsel fails to comply with the educational requirements of the rule.

While Appellant properly asserts that the purpose of Rule 801 is to provide competent and professional counsel in capital cases,[3] this purpose has not been thwarted here. The trial court emphasized that Appellant's counsel was a "learned and highly competent attorney who has previously tried death penalty cases in Berks County." Trial Court Opinion at 4. It found that Appellant was invoking Rule 801 to gain a last-minute continuance of the August 19, 2004 proceeding, which had been scheduled by court order dated June 21, 2004. The court noted that Appellant's counsel could have completed six hours of education in the more than two months that had passed between the June 4, 2004 adoption of Rule 801 and the August 19, 2004 penalty hearing. Finally, the court explained that the District Attorney's Office, the witnesses, the jurors, and the court were all prepared to proceed and that the grant of a continuance would have caused much difficulty for all those involved. *Id.* at 3. Under these circumstances, we find that the trial court did not abuse its discretion by denying Appellant's motion for a continuance.

**3.** The Comment refers to the purpose of the rule as follows:

> The purpose of this rule is to provide minimum uniform statewide standards for the experience and education of appointed and retained counsel in capital cases, to thus ensure such counsel possess the ability, knowledge, and experience to provide representation in the most competent and professional manner possible. These requirements apply to counsel at all stages of a capital case, including pretrial, trial, post-conviction, and appellate.

*Comment,* Pa.R.Crim.P. 801.

Relevant to Appellant's next claim is the fact that Appellant's criminal history included two prior robbery convictions in 1986 and 1987, and a conviction for possession of a weapon in 1994.[1]  All of these convictions occurred in the State of New York.  In support of the significant history of violent felonies aggravator, the Commonwealth presented the testimony of Otis Cruse, Appellant's New York Parole Officer, to establish Appellant's two prior robbery convictions.[5]  The Commonwealth did not present evidence of the weapons conviction.[6]  Nevertheless, Appellant now argues that the trial court erred by allowing the Commonwealth to present testimony regarding the weapons conviction because such offense is not a violent felony and therefore should not have been admitted to support the significant history of violent felonies aggravator.

This claim fails as the record belies Appellant's assertion that the trial court permitted the Commonwealth to present testimony of the weapons offense to prove the significant history of violent felonies aggravator.  As noted, the Commonwealth did not present Officer Cruse to testify regarding Appellant's weapons conviction and abided by its word not to elicit any reference to the weapons conviction during Officer Cruse's testimony.  Thus, as the record clearly shows, the Commonwealth did not attempt to utilize Appellant's prior weapons offense in support of the aggravating circumstance that Appellant had a significant history of violent felonies.

4.  Appellant committed the weapons offense on December 21, 1993, and was convicted on February 14, 1994.  Thus, the conviction is referred to by Appellant as the 1994 conviction, while testimony at the penalty phase refers to the same conviction as the 1993 offense.

5.  The evidence supporting the significant history of violent felonies aggravator is discussed *infra* at 751–52.

6.  Commonwealth Exhibit 55, which is a certified record of the weapons conviction, was admitted into evidence, but was never shown to the jury.  During the Commonwealth's direct examination of Officer Cruse, the parties met at sidebar and Appellant objected to the admission of the introduction of the 1994 weapons conviction to support the significant history of violent felonies aggravator because it was not a crime of violence.  N.T. dated 8/26/2004, at 298.  The Commonwealth explained to the court that it was not presenting Officer Cruse to testify about Appellant's weapons conviction, but, as noted, only to testify about Appellant's two prior robbery convictions, which it was using to support the aggravator.  *Id.* at 299.

■ Appellant further argues that the trial court erred by failing to instruct the jury not to consider the weapons conviction in conjunction with the significant history of violent felonies aggravator. We note that although no reference was made to such conviction during Otis Cruse's testimony, there was a reference made to Appellant's weapons conviction during the direct examination of Lori Monroe, who was a defense expert in the field of clinical social work. While explaining Appellant's social history and adjustment to prison life, Monroe testified that "in 93 [Appellant] has [sic] a possession of a firearm violation where he gets a sentence of two and a half to five years." N.T. dated 8/25/2004, at 303. At a sidebar conference during Monroe's direct examination testimony, the Commonwealth explicitly stated to the trial court, "I just want to make sure that we are clear on the record, that the Commonwealth has not raised the crimes and [they] are not part of the aggravating circumstances." *Id.* at 300.

In subsequent cross-examination, the Commonwealth reiterated the timeline of Appellant's prison experiences, which Monroe referenced on direct examination by defense counsel, and asked Monroe the following question:

COMMONWEALTH: You mentioned some kind of matter with a firearms [sic] that occurred after the robbery sentence of two to six years?

MONROE: Yes.

*Id.* at 343. The Commonwealth proceeded to reference the date of the weapons conviction and when Appellant was paroled. It then immediately questioned Monroe regarding the next chronological stage in Appellant's life, *i.e.*, his time spent in Reading, Pennsylvania. *Id.* at 344.

The Commonwealth did not link its brief reference to Appellant's weapons conviction to the significant history of violent felonies aggravator, but rather only mentioned the offense in the same manner as did the defense expert, *i.e.*, as a part of the timeline of Appellant's life and adjustment to prison. Significantly, Appellant did not object when the Commonwealth referenced the conviction during its cross-examination

of Monroe and did not request any curative jury instruction regarding the jury's consideration of the weapons offense. Thus, Appellant's claim regarding a lack of a jury charge is waived as it was never raised before the lower court. *See* Pa.R.A.P. 302 (Issues not raised in the lower court are waived and cannot be raised for the first time on appeal). Moreover, based on the fact that the Commonwealth never argued that the weapons conviction should be considered in support of the significant history of violent felonies aggravator, such an instruction would not have been warranted.

█ Appellant next contends that the Commonwealth presented insufficient evidence to support the aggravating circumstance that he knowingly created a grave risk of death to another person in addition to the victim of the offense pursuant to 42 Pa.C.S. § 9711(d)(7).[7] He argues that the Commonwealth failed to identify any specific person for whom a grave risk of death was created. Appellant alleges that the Commonwealth's general assertion of grave risk of death to unnamed children and adults on South Sixth Street at the time of the shootings was simply an appeal to passion. Finally, he argues that the testimony of the victim's companion, Tyrone Bryant, does not establish beyond a reasonable doubt that he was exposed to a grave risk of death because his injuries were only lacerations from breaking glass.

█ When considering whether the evidence supports a finding that the grave risk of death aggravator is applicable, we review the actor's conduct to determine whether the conduct brought others into a life-threatening situation. *Commonwealth v. Drumheller*, 570 Pa. 117, 808 A.2d 893, 909

---

7. In his 1925(b) statement, Appellant challenged the weight and not the sufficiency of the evidence supporting both aggravating circumstances. The trial court addressed and rejected the claims, utilizing a weight of the evidence analysis. Appellant, however, has abandoned any weight of the evidence claim in his brief to our Court and therefore we shall not address such issue. While Appellant's instant challenges to the sufficiency of the evidence supporting the aggravating circumstances are technically waived, we shall address them pursuant to our statutory obligation to reverse a sentence of death if "the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d)." 42 Pa.C.S. § 9711(h)(3)(ii).

(2002) (citations omitted). "Sufficient evidence to support the application of the aggravating circumstance of creating a grave risk of harm to persons other than the murder victim, has been found by this Court in those instances where the other persons are in close proximity to the decedent at the time of the murder, and due to that proximity are in jeopardy of suffering real harm." *Id.*, quoting, *Commonwealth v. Paolello*, 542 Pa. 47, 665 A.2d 439, 456 (1995). Further, we have held that it is not necessary for the endangered bystander to be in the direct line of fire in order to be placed in a grave risk of death. *Commonwealth v. Rios*, 546 Pa. 271, 684 A.2d 1025, 1036 (1996).

The evidence unmistakably establishes that Appellant created a grave risk of death to another person in addition to the victim of the offense, thus satisfying Section 9711(d)(7). The most obvious person for whom a grave risk of death was created was Tyrone Bryant, who accompanied Bolton down the street and ran with him into the vestibule of a nearby building after the shooting began. Bryant's life was endangered when Appellant shot at Bolton on the street and when Appellant reached his hand into the doorway of the vestibule and fired several shots, killing Bolton. The fortuitous fact that Bryant was not actually shot or seriously injured does not refute the notion that Appellant's actions placed Bryant in grave risk of death. *See Drumheller*, 808 A.2d at 910 (holding that the actual injury suffered by an individual is irrelevant in determining whether that individual was placed in grave risk of death by the defendant's conduct; the relevant question is whether the defendant's conduct brought the individual into a life-threatening situation); *Commonwealth v. Mitchell*, 528 Pa. 546, 599 A.2d 624, 628 (1991) (holding that the fact that the person placed in grave risk is "lucky" and is not injured is of "no importance" to a determination under Section 9711(d)(7)).

The Commonwealth also presented the testimony of neighbors who observed children and other bystanders on the street near where the shooting occurred. Marcelina Rosa testified that his two granddaughters were playing outside with four other children when a man fired shots "above" the children.

N.T. 8/27/2004 at 546. Rosa explained that when the shots rang out, the children had their "[h]ands up and [were] screaming desperately." *Id.* at 549. Michael Greis testified that he observed two males peeking around a corner immediately before gunfire erupted and that the street at that moment was filled with people, including children and the elderly. *Id.* at 275–278. Carl Waniger testified that he observed several people and children on the streets when the shots were fired. *Id.* at 100. Further, co-conspirator Wilson Melendez testified that a woman and several children were on the sidewalk at the intersection of Sixth and Chestnut Streets at the time Appellant opened fire. *Id.* at 414, 416. Finally, the victim's companion, Bryant, acknowledged in his testimony that there were a lot of people outside and children running around when the shots were fired. *Id.* at 312.

We find this evidence sufficient to establish that Appellant endangered the lives of others in close proximity to the victim at the time of the shooting and therefore satisfies the grave risk of death aggravator. *See Commonwealth v. Miles,* 545 Pa. 500, 681 A.2d 1295, 1305 (1996) (holding that the grave risk of death aggravator was established when defendant fired his gun while in a fight with four other people at a public shopping center); *Commonwealth v. Smith,* 518 Pa. 15, 540 A.2d 246, 262 (1988) (holding that the grave risk of death aggravator was satisfied when the defendant shot the victim on a sidewalk in front of a home where three individuals were sitting on the porch and could have been struck by a missed shot or ricochet bullet); *Commonwealth v. Judge,* 530 Pa. 403, 609 A.2d 785, 790 (1992) (holding that the grave risk of death aggravator was established when the defendant attempted to kill his victim by repeatedly firing his weapon near a group of children gathered in a confined porch area).

Appellant next argues that the Commonwealth failed to establish by sufficient evidence that he had a significant history of felony convictions involving the use or threat of violence to a person. As noted *supra,* in support of this aggravator, the Commonwealth presented the testimony of Otis Cruse, Appellant's New York parole officer. Officer

Cruse testified that he had supervised Appellant after his robbery conviction in 1987 and that Appellant had a 1986 conviction for the same offense. N.T. 8/26/2004, at 300. The Commonwealth additionally presented testimony from Detective Ronald Cruz of the Fugitive Unit of the Berks County District Attorney's Office. Detective Cruz testified that he received certified copies documenting Appellant's two robbery convictions in 1986 and 1987, which were admitted into evidence as Commonwealth's Exhibits Nos. 53 and 54. *Id.* at 389–393. Reading from the booking-form narrative, which stated the underlying factual basis for the 1986 robbery conviction, Detective Cruz stated that Appellant "remove[d] property from Complainant at gunpoint while in concert with one other and did cut the Complainant about his body with a razor." *Id.* at 392. As to the factual narrative for the 1987 robbery conviction, Detective Cruz stated that Appellant "threaten[ed] Complainant with bodily harm and removed property from Complainant without his permission or authority to do so." *Id.* at 393.

Appellant concedes that the introduction of the certified documents relating to the New York robbery convictions constitutes sufficient evidence to prove the significant history of violent felonies aggravator. *See Commonwealth v. Ly,* 528 Pa. 523, 599 A.2d 613, 621 (1991) (holding that robbery is a felony in New York and three prior convictions for robbery satisfies the significant history of violent felonies aggravator). He further acknowledges that the testimony offered by the Commonwealth as to the factual predicate for his robbery convictions was a permissible method by which to demonstrate the aggravator. *See Commonwealth v. Jones,* 542 Pa. 464, 668 A.2d 491, 524 (1995) (holding that "the Commonwealth may place the underlying facts of the prior convictions before the jury so that jurors may assess the weight to be given to the factors."). Appellant's challenge to the sufficiency of the evidence supporting the significant history of violent felonies aggravator is based entirely on the assertion that his two robbery convictions occurred on the same date, June 24, 1987,

and therefore should have been considered a single conviction, not amounting to a significant history of violent felonies.

This claim is meritless as it is not factually supported by the record. Contrary to Appellant's assertions, the two robbery offenses were not committed on June 24, 1987; rather, Appellant was sentenced for both offenses on that date. Appellant's arrest records, set forth in Commonwealth Exhibit Nos. 53 and 54, reveal that the robberies were committed on July 9, 1986, and April 8, 1987, and were based upon different factual predicates. Thus, there is no merit to Appellant's claim and, as he concedes, the two robbery convictions are sufficient to establish a significant history of violent felonies pursuant to Section 9711(d)(9).

Having rejected all of Appellant's claims and concluded that the evidence supported both aggravating circumstances and therefore satisfied 42 Pa.C.S. § 9711(h)(3)(ii), we must affirm the sentence of death unless it was a product of passion, prejudice, or any other arbitrary factor. *Id.* at § 9711(h)(3)(i). After carefully reviewing the trial record, we conclude that the sentence of death was not a product of passion, prejudice, or any other arbitrary factor, but was based upon the evidence admitted at trial.

Accordingly, we affirm the sentence of death.[8]

Chief Justice CASTILLE, and Justice SAYLOR, EAKIN, Justice TODD and Justice McCAFFERY join the opinion.

---

8. The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor pursuant to 42 Pa.C.S. § 9711(i).