J-S46026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DONALD M. YOUNG | : | |
| | : | |
| Appellant | : | No. 808 WDA 2025 |

Appeal from the Judgment of Sentence Entered January 28, 2025
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0003245-2022

BEFORE: BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.: **FILED: May 19, 2026**

Appellant Donald M. Young appeals from the judgment of sentence imposed after a jury convicted him of flight to avoid apprehension.[1] On appeal, Appellant claims that the verdict was against the weight of the evidence and that the trial court erred by denying his motion for a continuance and his motion for extraordinary relief. After review, we affirm.

The trial court set forth the facts of the case and the post-trial procedural history as follows:

Sergeant John Dixon, of the Westmoreland County Sheriff's Office, testified that he learned in late May 2022 that a felony firearms warrant had been issued for the arrest of [Appellant]. Due to the nature of the warrant, a team of deputies was put together to locate [Appellant] and serve the arrest warrant. Through investigation [Appellant] was located at 621 Garfield Avenue in the Borough of Scottdale, Westmoreland County. Deputy Lacey Saxton testified that she proceeded to that location in an

---

[1] 18 Pa.C.S. § 5126(a).

undercover capacity on June 10, 2022, and observed [Appellant] at the residence.

Sgt. Dixon and several deputies arrived at the location to serve the warrant. Sgt. Dixon was on the initial entry team. As he and other deputies approached the residence, several juveniles confronted the deputies and were "extremely hostile." After about five to eight minutes of dealing with these juveniles, Sgt. Dixon was able to approach the front door. [Appellant's] girlfriend, Shanna Fletcher, met him on the front porch. Fletcher told Dixon that she's "tired of this shit", that she was having "domestic problems with him", and that he, meaning [Appellant], was in Greensburg, and not there. She gave the deputies consent to search the residence.

Sgt. Dixon and other deputies conducted an initial search of the residence and were unable to locate [Appellant]. A secondary search was conducted with a new search team, consisting of Sergeant Irvin Shipley and Deputy Brandon Stephenson, among others.

Sgt. Shipley testified that he was part of a team of deputies backing up Sgt. Dixon's team. They initially secured the perimeter of the residence, and he observed the juveniles on the front porch who were "embarrassed because whenever the presence of so many people surrounding the house, we do start announcing our presence pretty loud. They weren't used to that, and I think it embarrassed them, and that's why they quickly started to protest us yelling." Shipley explained that the deputies "announce their presence" by stating multiple times, "Sheriff's Office with a warrant. Right from the door we were yelling in, Donald Young, please surrender. Donald Young, sheriffs with a warrant; make yourself known; present yourself inside this structure."

Sgt. Shipley testified that they announced themselves again when they initiated the secondary search of the residence. The second search started in the basement of the residence and worked up to the first and second floors of the residence. [Deputy] Stephenson was a part of the secondary search and as they entered each room, they would announce, "Sheriff's Office with a warrant, if you're in here, make yourself known."

[Appellant] was eventually located hiding in an attic entrance inside a closet in the master bedroom on the second floor. When they entered the closet, the deputies pulled back clothing and blankets that were against the wall, and were able to see an

access panel leading to the attic. Once the deputies got into position, they "commanded" [Appellant] to open the door and surrender to the deputies. When they received no response, Sgt. Shipley testified that he opened the access panel and saw [Appellant] in the area directly behind the entrance. [Appellant] closed the panel, forcing the deputies to re-open it and physically pull [Appellant] out of the closet so that they could handcuff him and take him into custody.

[Appellant] testified that he observed the sheriffs as they approached the house from a window on the second floor, and he knew that they were "law enforcement." He also assumed they were coming to the residence, and he told his girlfriend that once they leave he would "come back out." [Appellant] admitted that he was alerted to the presence of the deputies in the master bedroom, and that he heard them announce they were from the Sheriff's Office, that they were yelling his name, and asking him to come out of the attic entranceway. His only explanation for why he did not surrender was because he "was just scared."

The jury convicted [Appellant] of count one, flight to avoid apprehension and acquitted [Appellant] of resisting arrest on November 5, 2024. [The trial court] subsequently scheduled a sentencing hearing for January 28, 2025. Prior to sentencing, [Appellant] made an oral motion for extraordinary relief pursuant to Pa.R.Crim.P. 704(B). He argued that because [another judge] granted [Appellant's] motion to suppress in the [case that officers were serving the warrant for], [the trial] court should therefore vacate his conviction for flight to avoid apprehension. [The trial] court denied that motion and proceeded with sentencing. [Appellant] was sentenced to five (5) years of probation.

Trial Ct. Op. and Order, 6/2/25, at 2-4 (some formatting altered and citations omitted).[2]

---

[2] We note that the trial court filed a Rule 1925(a) opinion on July 29, 2025 incorporating its earlier opinion and order dated June 2, 2025. *See* Trial Ct. Op., 7/29/25. For clarity, we cite directly to the opinion dated June 2, 2025.

Appellant filed timely post-sentence motions, which the trial court denied on June 4, 2025.[3] Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Whether the verdict [for flight to avoid apprehension] was against the weight of the evidence when the Commonwealth failed to prove beyond a reasonable doubt that Appellant had knowledge that Westmoreland County Sheriffs had a warrant for his arrest when his testimony suggested he was unaware sheriffs were in the residence to apprehend him and he otherwise exhibited a fear of police based on prior negative interactions.

2. Whether the trial court abused its discretion in denying Appellant's motion to continue trial when Appellant had an outstanding pre-trial motion to suppress the evidence in the underlying matter for which the arrest warrant in this case was issued.

3. Whether the trial court abused its discretion in denying Appellant's oral motion for extraordinary relief prior to sentencing when it was argued that his conviction was tainted by an erroneous and illegal arrest warrant issued in [the related case].

Appellant's Brief at 2-3 (some formatting altered).

Appellant's first claim is that the verdict for flight to avoid apprehension was against the weight of the evidence. *See* Appellant's Brief at 10-14. Specifically, Appellant claims that because he testified that he hid from police

_____

[3] While the trial court's order and opinion is dated June 2, 2025, it was not served until June 4, 2025. *See* Docket at 26. Accordingly, the date of entry for the order was June 4, 2025. *See* Pa.R.A.P. 108(a)(1) (stating that "the day of entry shall be the day the clerk of the court or the office of the government unit mails or delivers copies of the order to the parties").

due to his general fear of law enforcement and that he did not know about the warrant for his arrest, the jury's verdict was "conjecture," as they must have "assume[d] that [he] fled from authorities in order to avoid apprehension, flight, or punishment." Appellant's Brief at 12-14.

In reviewing a challenge to the weight of the evidence, we are governed by the following standard of review:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017) (citations omitted).

> As this Court has repeatedly stated,

> [t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.

> \* \* \*

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest

- 5 -

consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Spence*, 290 A.3d 301, 311 (Pa. Super. 2023) (citations omitted and formatting altered).

Here, the trial court addressed Appellant's weight claim as follows:

[T]he verdict was not so contrary to the evidence as to shock one's sense of justice. The Commonwealth called four Westmoreland County Deputy Sheriffs who testified about the execution of the arrest warrant and circumstances surrounding the arrest of Defendant on June 10, 2022. Sergeant Irvin Shipley and Deputy Sheriff Brandon Stephenson explained to the jury during their testimony that as they searched the residence, they announced their presence, they announced they had a warrant, and that they called out [Appellant's] name and demanded that he "show himself" and surrender to the deputies. [Appellant] admitted that he saw the deputies as they approached the house, and he assumed they were coming to his residence. [Appellant] admitted that he hid from the deputies in the entry way to the attic in the closet, and that he remained hidden even when he heard the deputies announcing their presence and calling out his name to surrender to them when they were in the master bedroom. His actions and effort to remain hidden forced the deputies to physically grab [Appellant] and pull him from that entry way and the closet so that they could place him in custody. It is sufficient for [Appellant] to intentionally elude law enforcement to avoid apprehension, trial or punishment on a charge or conviction. *Commonwealth v. Steffy*, 36 A.3d 1109, 1112 (Pa. Super. 2012). The evidence presented to the jury clearly supports the conclusion that [Appellant] intended to elude the deputy sheriffs attempting to execute the felony arrest warrant in this case.

Trial Ct. Op. and Order, 6/2/25, at 6 (some formatting altered).

After our review of the record, we discern no abuse of discretion in the trial court's denial of Appellant's weight claim. ***See Windslowe***, 158 A.3d at 712. As the trial court notes, multiple sheriff's deputies testified at Appellant's trial that they arrived at Appellant's girlfriend's home to serve an arrest warrant on Appellant. ***See*** N.T., 11/5/24, at 34-37, 69-70, 97-98. Deputies testified that they announced that they had a search warrant for Appellant while outside of the home and while searching inside the home for Appellant. ***See id.*** at 72-78, 80, 85-86, 99-102. Appellant testified that he hid from the deputies, that he heard the deputies searching for him once they entered the bedroom, and that he still failed to come out of his hiding place. ***See id.*** at 118-19, 121-24, 128-29. While Appellant testified, and now argues, that he only hid from police due to his general fear of police, the jury was free to discredit this testimony. ***See Spence***, 290 A.3d at 311 (stating that a jury "is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses"). Accordingly, no relief is due.

Appellant's second claim is that the trial court erred by denying his motion for a continuance. ***See*** Appellant's Brief at 14. Specifically, Appellant argues that the trial court should have granted his continuance because, at the time of the motion for a continuance in this case, he had a pending motion to suppress in the underlying case for which the arrest warrant was issued. ***See id.*** at 17-18. Because that motion to suppress was subsequently granted and the charges at the related docket were dismissed, Appellant argues that

the arrest warrant was "fruit of the poisonous tree" and that he should never have been charged with felony flight to avoid apprehension as the "arrest warrant became a nullity upon suppression of the evidence." ***See id.*** at 17-19.

"The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion." ***Commonwealth v. Boxley***, 948 A.2d 742, 746 (Pa. 2008); ***see also Commonwealth v. Ross***, 57 A.3d 85, 91 (Pa. Super. 2012) (*en banc*).

The ***Ross*** Court further explained:

A bald allegation of an insufficient amount of time to prepare will not provide a basis for reversal of the denial of a continuance motion. Instead, [a defendant] must be able to show specifically in what manner he was unable to prepare his defense or how he would have prepared differently had he been given more time. We will not reverse a denial of a motion for continuance in the absence of prejudice.

***Ross***, 57 A.3d at 91 (citations omitted and formatting altered).

The refusal to grant a continuance constitutes reversible error only if prejudice or a palpable and manifest abuse of discretion is demonstrated. When reviewing a trial court's decision to deny a request for a continuance, we must consider the following factors:

(1) the necessity of the witness to strengthen the defendant's case;

(2) the essentiality of the witness to the defendant's defense;

(3) the diligence exercised to procure his or her presence at trial;

(4) the facts to which he or she could testify; and

- 8 -

> (5) the likelihood that he or she could be produced at court if a continuance were granted.

***Commonwealth v. Bozic***, 997 A.2d 1211, 1225 (Pa. Super. 2010) (citations omitted and formatting altered).

Additionally, the grading of flight to avoid apprehension, is established by "the conduct of the accused **at the time [the flight was] attempted or realized** together with only those facts which [were] known to the parties at that time." ***Commonwealth v. Stoppard***, 103 A.3d 120, 123-24 (Pa. Super. 2014) (citation omitted and emphasis added).[4]  However,

> the plain language of the [flight to avoid apprehension] statute requires that the defendant intend to avoid apprehension, trial or punishment.  The statute does not mandate that the defendant have knowledge of the precise grading of the offense for which he is attempting to avoid capture.  The intent element of the crime is separate and apart from whether the person has been convicted or is charged with a felony.  Furthermore, nothing in the statutory language requires that police have knowledge of the underlying charge or conviction.  It is sufficient for the defendant to intentionally elude law enforcement to avoid apprehension, trial or punishment on a charge or conviction.  Where that charge or conviction is a felony, the flight to avoid apprehension charge is properly graded as a felony of the third degree.

***Steffy***, 36 A.3d at 1111-12.

Here, the trial court addressed Appellant's claims as follows:

---

[4] The ***Stoppard*** court cited ***Commonwealth v. Janis***, 583 A.2d 495, 497 (1990), for the above stated proposition.  While ***Janis*** dealt with an escape conviction, the ***Stoppard*** court concluded that "based on the similarity of purpose in the language of [the flight statute], ***Janis's*** rationale applies equally to the crime of flight to avoid apprehension."  ***See Stoppard***, 103 A.3d at 124 n.1.

In the instant case, [Appellant] was charged and convicted by jury of flight to avoid apprehension, when deputy sheriffs served a felony firearms arrest warrant issued as a result of the seizure by law enforcement of firearms and other evidence subsequently ruled inadmissible when Judge Krieger granted [Appellant's] suppression motion [in the related case]. [Appellant] cites no case law to support his unique argument that the arrest warrant issued is fruit of the poisonous tree. The arrest warrant at issue in the instant matter, was predicated on the filing of charges in that case based upon evidence that existed at that time.

The law, as it relates to the crime of flight to avoid apprehension . . . is clear that [a] defendant need not know the grading of the charges that he is fleeing from. [**See Steffy**, 36 A.3d at 1111-12.] Furthermore, the intent element as it relates to this crime is "separate and apart from whether the person has been convicted or is charged with a felony . . . . It is sufficient for [a] defendant to intentionally elude law enforcement to avoid apprehension, trial or punishment on a charge or conviction . . . the plain language of the statute requires that the defendant intend to avoid apprehension, trial or punishment. The statute does not mandate that the defendant have knowledge of the precise grading of the offense for which he is attempting to avoid capture." ***Id.***

In ***Stoppard***, the defendant argued that because felony burglary charges were withdrawn after he was arrested, his flight and escape was from a misdemeanor underlying charge of theft, not the felony relating to the withdrawn burglary charge, and should be graded as a misdemeanor. The Pennsylvania Superior Court rejected that argument and concluded, "[a]s is evidenced in the plain language of [the flight to avoid apprehension statute], the grading of [the flight charge] depended on the grading of the underlying crimes. Here, **at the time [Stoppard] fled**, the underlying crimes with which he had been **charged** were burglary and conspiracy to commit burglary. Therefore, because burglary is a crime that can only be graded as felony of the first or second degree . . ., [Stoppard] committed felony escape and felony flight to avoid apprehension at the time he fled." [***Stoppard***, 103 A.3d at 124 (emphasis added)].

\* \* \*

The court did not abuse its discretion in failing to grant [Appellant's] request for a continuance the day of trial, nor was [Appellant's] conviction a manifest injustice under the

- 10 -

circumstances of this case. The Commonwealth proceeded to trial as a result of [Appellant's] actions on June 10, 2022, hiding from deputies executing the arrest warrant, and requiring them to use physical force to remove him from his hiding spot in the attic entry way within a closet.

The charges that served the basis for the arrest warrant were felony firearm offenses. The fact that [the judge in the related case] subsequently invalidated a search warrant that led to the discovery of those firearms has no effect on the validity of the arrest warrant issued in this matter. Nor did that ruling impact the proof at trial relative to the grading of the underlying charges, as there was no requirement that the Commonwealth prove that [Appellant] had knowledge and/or intent to flee from a "felony" arrest warrant. As per [*Stoddard* and *Steffy*,] the grading of flight to avoid apprehension charge is predicated on the grading of the charges filed at the time he fled.

Trial Ct. Op. and Order at 8-10 (some formatting altered).

After review, we discern no abuse of discretion in the trial court's denial of Appellant's pre-trial motion for a continuance. *See Boxley*, 948 A.2d at 746. As the trial court correctly notes, at the time that police served the arrest warrant, there was a then-valid felony arrest warrant for Appellant. *See* N.T., 11/5/24, at 36, 70, 99. Since officers were seeking to apprehend Appellant based on a then-valid felony arrest warrant, the disposition of the motion to suppress in the related case could have no effect on the grading of Appellant's flight charge or the evidence underlying his flight conviction. *See Stoppard*, 103 A.3d at 123-24; *Steffy*, 36 A.3d at 1111-12. Because the subsequent suppression and dismissal in the underlying case could have no effect on his conviction for flight, Appellant cannot show how the trial court's decision to deny his motion for continuance resulted in prejudice. *See Ross*, 57 A.3d at 91; *Bozic*, 997 A.2d at 1225. Accordingly, it is of no moment that the

evidence that served as the basis for the arrest warrant was later suppressed, and the charges were dismissed in the underlying case. Therefore, the court did not abuse its discretion in denying Appellant's motion for a continuance. *See Boxley*, 948 A.2d at 746; *Ross*, 57 A.3d at 91; *Bozic*, 997 A.2d at 1225.

Appellant's final claim is that the trial court erred in denying his oral motion for extraordinary relief at sentencing.[5] *See* Appellant's Brief at 19-22. Specifically, in his motion for extraordinary relief, Appellant sought "an order arresting the judgment, vacating his conviction, and releasing him" based on the fact that the evidence seized in the case underlying the arrest warrant was suppressed and the charges were dismissed. N.T., 1/28/25, at 3-4; *see also* Appellant's Brief at 20-22. Because the charges in that case were subsequently dismissed, Appellant claims the arrest warrant was "fruit of the poisonous tree" and that, as a result, Appellant should "never have been charged in the instant matter or alternatively, been charged only with a second degree misdemeanor flight." Appellant's Brief at 20-21.

---

[5] The filing of a motion for extraordinary relief by itself does not preserve any issues for appeal. *See* Pa.R.Crim.P. 704(B)(3). Here, Appellant raised the denial of his motion for extraordinary relief in a timely post-sentence motion. *See* Post-Sentence Motion, 2/5/25, at 2 (unpaginated). Accordingly, we find that he has preserved his issue by raising it in a post-sentence motion. *See Commonwealth v. Howe*, 842 A.2d 436, 440-41 (Pa. Super 2004) (finding that a defendant preserved the claim raised in his motion for extraordinary relief where the defendant subsequently filed a post-sentence motion for reconsideration of the trial court's denial of the motion for extraordinary relief).

Because Appellant sought an arrest of judgment in his motion for extraordinary relief, we apply the following standard:

> In passing upon [a motion in arrest of judgment], the sufficiency of the evidence must be evaluated upon the entire trial record. All of the evidence must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences arising therefrom. The effect of such a motion is to admit all the facts which the Commonwealth's evidence tends to prove. Hence, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, is sufficient to support all elements of the offense.

*Commonwealth v. Robinson*, 33 A.3d 89, 93 (Pa. Super. 2011) (citations omitted and some formatting altered).

This Court has previously addressed the elements that the Commonwealth must prove to convict a defendant of flight to avoid apprehension as follows:

> The Crimes Code defines the offense of flight to avoid apprehension, trial or punishment as follows:
>
> > **A person who willfully conceals himself** or moves or travels within or outside this Commonwealth **with the intent to avoid apprehension**, trial or punishment **commits a felony** of the third degree **when the crime which he has been charged with** or has been convicted of **is a felony** and commits a misdemeanor of the second degree when the crime which he has been charged with or has been convicted of is a misdemeanor.
>
> 18 Pa.C.S.A. § 5126 (emphasis added). Pertinently, the plain language of this statute makes it an offense if a person conceals himself with the intent to avoid apprehension when the crime he has been charged with is a felony or misdemeanor. In other words, Section 5126 requires a specific intent to avoid apprehension, *i.e.*, arrest, after acquiring knowledge that charges have been filed. *See* [*Steffy*, 36 A.3d at 1112]. It therefore is incumbent upon the Commonwealth to prove a defendant was

- 13 -

aware of pending charges while fleeing. This of course may be shown circumstantially.

***Commonwealth v. Reed***, 347 A.3d 795, 803 (Pa. Super. 2025) (some citations omitted and formatting altered).

Here, as stated above, the fact that the charges underlying the arrest warrant were later dismissed is irrelevant to Appellant's guilt for flight or the grading of flight.[6] ***See Stoppard***, 103 A.3d at 123-24. The critical moment for determining the grading of flight is at the time the flight occurred. ***See id.*** At the time Appellant attempted to avoid apprehension, deputies were attempting to serve a valid felony arrest warrant. ***See*** N.T., 11/5/24, at 36, 70, 99.

Further, the Commonwealth established all the requisite elements of flight. Appellant himself admitted at trial that he willfully concealed himself in the attic to hide from the deputies. ***See*** N.T., 11/5/24, at 121-22, 128-29. Multiple deputies testified that, while searching the home for Appellant, they repeatedly yelled that they were searching for Appellant based on a warrant for his arrest. ***See id.*** at 72-78, 80, 85-86, 99-102. Additionally, Appellant himself admitted that he heard deputies state that they were searching for

_____

[6] We note that, were we to conclude that a defendant cannot be found guilty of flight where charges are later dismissed, it would effectively allow suspects to flee arrest warrants in the hope that some flaw in the investigation or prosecution would result in dismissal and, therefore, somehow excuse their flight from police executing an arrest warrant. This Court's approval of such an absurd result would place police, the public at large, and criminal defendants themselves at an increased risk of danger.

him based on an arrest warrant once the deputies entered the bedroom where the attic crawlspace was located. *See id.* at 121-23, 128-29. Nonetheless, Appellant hid in the attic crawlspace to avoid apprehension. *See id.* Accordingly, the trial court did not err in rejecting Appellant's motion for extraordinary relief seeking an arrest of judgment because the evidence admitted at trial, and all reasonable inferences drawn therefrom, was sufficient to support all elements of flight to avoid apprehension. *See Robinson*, 33 A.3d at 93; *see also Reed*, 347 A.3d at 803. For these reasons, no relief is due.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

5/19/2026